# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

GWENZELLA D. PENNEWELL,      )
     )
       Appellant,        )
     )
       v.        )      C.A. No. N12A-12-005 DCS
     )
VICTIMS' COMPENSATION      )
ASSISTANCE PROGRAM,      )
     )
       Appellee.        )

Submitted: July 31, 2014
Decided: October 31, 2014

*On Appeal from the Decision of the Victims' Compensation Assistance Program Appeals Board of the State of Delaware – **AFFIRMED.***

# OPINION

Gwenzella D. Pennewell, *Pro Se* Appellant.

Ralph K. Durstein, III, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for Victims' Compensation Assistance Program.

**STREETT, J.**

## Introduction

Appellant Gwenzella D. Pennewell ("Appellant") appeals the November 16, 2012 decision of the Victims' Compensation Assistance Program Appeals Board (the "Board"). The Board affirmed the Victims' Compensation Assistance Program's ("VCAP") decision to deny Appellant's claim for compensation for her son's funeral expenses based on her son's behavior at the time of his death. VCAP determined that Appellant's son was found shot inside of a vehicle after his 10:00 p.m. curfew and, as a result, he had violated a condition of his probation at the time of his death.

On appeal, Appellant contends that her son did not have a 10:00 p.m. curfew at the time of his death because he had been released on bail.

For the reasons set forth below, the Board's decision is affirmed.

## Factual and Procedural Background

On June 13, 2012, at 1:11 a.m., Wilmington Police responded to a report of a car accident at 9th and Grant Streets in Wilmington and found Appellant's son inside of a vehicle on the Woodlawn Library's property. He had sustained a gunshot wound to his chest. Appellant's son was transported to Christiana Hospital where he was pronounced dead.

That same day (June 13, 2012), Appellant submitted a claim form to VCAP. Appellant sought compensation for her son's funeral/burial expenses.

2

On June 18, 2012, VCAP denied an award of funeral expenses for Appellant's son under 11 *Del. C.* § 9010. VCAP found that although Appellant's son was the victim of a homicide, he was on probation with a 10:00 p.m. curfew when the homicide occurred and that the police report "supports the position that [he] was not in his home at 10:00pm, in violation of his probation."[1]

According to the police report, Appellant's son sustained a gunshot wound to his chest at an unknown location on June 13, 2012 at 1:11 a.m. and "then halted his vehicle on the west side of the street up onto the property of the [W]oodlawn [L]ibrary" in Wilmington.[2]

On July 2, 2012, Appellant submitted a reconsideration form to VCAP. Appellant requested that VCAP reconsider its decision to deny payment of funeral expenses for her son because her son had been released on bail and had "new stimulation[s]" imposed upon him. Appellant also submitted copies of documents related to her son's release on bail.[3]

---

[1] VCAP Decision, ¶ 3 (June 18, 2012).

[2] Wilm. Police Dept. Initial Crime Rpt. (June 13, 2012).

[3] The documents are:
  (1) a Delaware Court of Common Pleas Money Bond of $31,400 in *State v. William H. Pennewell*, Case No. 1205019350, dated May 30, 2012;
  (2) a Delaware Superior Court Commitment/Release form for *State v. William H. Pennewell*, Case No. 0701007721, dated May 30, 2012 and showing the bail amount was $25,000 for each of the two VOP charges; and
  (3) a Bail and Recognizance Bond for *State v. William H. Pennewell*, Case No. 0701007721, dated May 30, 2012 and showing the total bond amount is $50,000 cash.

On July 5, 2012, VCAP issued a reconsideration decision and found that the additional information that Appellant provided did not support any change in its June 18, 2012 decision.

On July 24, 2012, Appellant submitted a request for a hearing before the Board. Appellant asserted that VCAP should not have denied compensation for her son's burial expenses because the "police know when your [*sic*] arrested, that VOP know [*sic*] longer exists until your [*sic*] found guilty or not guilty for the new charges."

A hearing was held on August 21, 2012. The Board heard testimony from Wilmington Police Department ("WPD") Detective Scott Chaffin, Probation & Parole Officer David Becker, and Appellant.

Det. Chaffin testified that he was the chief investigator of Appellant's son's homicide.[4] According to Det. Chaffin, WPD officers responded to a report of a car accident at 9th and Grant Streets in Wilmington at approximately 1:10 a.m. on June 13, 2012.[5] The officers found Appellant's son bleeding inside of a vehicle.[6] Appellant's son was transported to Christiana Hospital where he was pronounced dead from a gunshot wound to his torso.[7]

---

[4] Tr. of Bd. Hr'g, 13 (Aug. 21, 2012) (hereinafter "Tr. at _____").

[5] *Id.*

[6] *Id.*

[7] Tr. at 13, 18.

4

Det. Chaffin then testified about the homicide investigation, which was ongoing at the time of the Board hearing.[8] Det. Chaffin testified that Appellant's son had incurred debt exceeding $10,000 for a bond that had been posted and that Appellant's son had "made several references to acquaintances of his that he needed to get that money," however Appellant's son did not have "legitimate employment."[9]

Det. Chaffin testified that police recovered a neoprene mask from the backseat of the vehicle in which Appellant's son was found shot and that the female acquaintance who owned the vehicle told him that the mask was not in the vehicle prior to when Appellant's son borrowed her vehicle in the afternoon.[10]

Det. Chaffin further testified that records from Appellant's son's two cell phones showed that he called a "subject [he] owed money to" around 12:45 a.m. on June 13, 2012, approximately fifteen minutes before the homicide occurred.[11]

Officer Becker, who is a Senior Probation & Parole Officer with the Delaware Department of Corrections, testified that Appellant's son was serving probation for Violation of Probation ("VOP") on two convictions (Resisting Arrest and Possession With Intent to Deliver a Schedule II Controlled Substance

---

[8] Tr. at 14.

[9] Tr. at 14 – 15.

[10] Tr. at 15.

[11] *Id.*

5

("PWID")).[12] He was on probation at the time of his death. Officer Becker stated that he began supervising Appellant's son on September 1, 2011 while he (Appellant's son) was on Level 3 probation.[13]

Officer Becker testified that when Appellant's son initially reported to him on September 13, 2011, Officer Becker informed him that he was to report to Officer Becker on the second and fourth Tuesday of every month and that his curfew was 6:00 p.m. to 6:00 a.m.[14] However, Officer Becker stated that Appellant's son's curfew was changed to 10:00 p.m. to 6:00 a.m. in January 2012 because he had completed boot camp aftercare.[15]

Officer Becker further testified that on February 15, 2012, New Castle County Police arrested and charged Appellant's son for possession of .325 grams of heroin.[16] Officer Becker stated that he submitted a violation report to the Superior Court on March 8, 2012 based on the arrest, Appellant's son was subsequently arrested on an administrative warrant, a contested VOP hearing was held on April 11, 2012, Appellant's son pled guilty to violation of probation and

---

[12] Tr. at 57, 60, 61.

[13] Tr. at 29, 30.
     Officer Becker testified Appellant's son was sentenced to Level 5 Boot Camp for violation of probation on October 27, 2010. Thereafter, Appellant completed Level 4 Home Confinement and was "flowed down to Level 3 probation" on August 26, 2011.

[14] Tr. at 30.

[15] Tr. at 30 – 31.

[16] Tr. at 31.

aggravated possession of a controlled substance, and the Superior Court ordered a pre-sentence investigation and scheduled sentencing for June 22, 2012.[17] Officer Becker further stated that Appellant's son "knew he was to report" to Officer Becker after the April, 11, 2012 hearing "as he was ordered previous[ly], the same curfew, 10:00 p.m. [to] 6:00 a.m., and the dates to report."[18]

Officer Becker testified that Appellant's son reported to him for an office visit on May 8, 2012 and that his 10:00 p.m. curfew was unchanged.[19] However, when Operation Safe Streets ("OSS") Officers conducted a curfew check on May 17, 2012, the officers spoke with Appellant who stated that her son was "at his girl's like he always is."[20] Appellant's son also failed to report for a scheduled office visit with Officer Becker on May 22, 2012.[21]

Then, on May 24, 2012, Officer Becker stated that officers from the New Castle County Police Department and OSS went to Appellant's son's residence to arrest him on an administrative warrant for missing his curfew and for his failure to report to the scheduled office visit, an "altercation" between Appellant's son and the officers ensued, and Appellant's son was arrested on an administrative warrant

---

[17] Tr. at 31 – 32.

[18] Tr. at 32.

[19] *Id.*

[20] *Id.*

[21] Tr. at 33.

and on new charges that he incurred as a result of the altercation, including Assault Second Degree and Resisting Arrest.[22]  Officer Becker further stated that Appellant's son posted $81,400 cash bail and was released on May 31, 2012.[23] Officer Becker stated that he did not have any contact with Appellant's son after he was released on May 31, 2012 and before his homicide occurred on June 13, 2012.[24]

Officer Becker produced a copy of a May 24, 2012 administrative warrant for Appellant's son.[25]  He explained that an administrative warrant is based on a violation of a condition of probation and is issued by the Probation & Parole Department (not the police or the courts).[26]  Officer Becker also explained that:

> [w]hen someone is on probation, standard probation, they have the conditions of probation with the curfew . . . 10:00 p.m. to 6:00 a.m.  If they are arrested for a violation of probation and they post that bail, they are still beholden to the same conditions of probation once they are released on that bail that they are before that happened.[27]

---

[22] Tr. at 33 – 34, 35.

[23] Tr. at 34.
    Officer Becker testified that $50,000 of the $81,400 cash bail was for Appellant's son's alleged violation of probation on the two convictions.

[24] Tr. at 34.

[25] Tr. at 37.

[26] Tr. at 37, 47.

[27] Tr. at 54 – 55.

Officer Becker testified that when Appellant's son was released on cash bail, he was "still on probation" and his conditions of probation were "in addition to any conditions set by the bail."[28]

The Board entered into the record two bail documents for Case No. 0701007721 that Appellant previously submitted to VCAP. Officer Becker testified that the documents are "bail sheets showing how much the bail is, what the conditions of that bail are . . . [i]f the judge made any special conditions of that bail."[29] The "bail sheets" show that Appellant's son was released on $50,000 cash bond on May 30, 2012 and that his VOP hearing was scheduled for June 29, 2012. However, the "bail sheets" do not reference any special conditions for his release.

Appellant testified, without citing any authority, that "when you're out on bail, . . . your stipulation changes."[30] She stated that she has "gotten [her son] out on more than one" VOP and "when you get out on a VOP, they change the stipulation."[31] Appellant maintained that her son "didn't have any [curfew] because they didn't think he was going to get out."[32]

---

[28] Tr. at 57, 60.

[29] Tr. at 58.

[30] Tr. at 65.

[31] Tr. at 67.

[32] Tr. at 68.

Appellant further testified that after her son was released "he said, Mom, they didn't even change my VOP."[33] She posited that "they would have changed it because now they're saying he took the weapon . . . If you look at the charges they going to say, Well, I want you in at 5 o'clock. I don't even want you out until trial is over."[34] It is unclear whether Appellant meant Probation & Parole and/or the courts when she referenced "they."

On November 15, 2012, the Board issued a written decision and order. The Board noted that VCAP is not obligated to award compensation in any case, voted to unanimously affirm VCAP's decision, and denied compensation for Appellant's son's funeral expenses pursuant to 11 *Del. C.* § 9009(3) and § 9010(b).

The Board found that Appellant's son "was found mortally wounded from a gunshot to his upper torso on the streets of Wilmington, Delaware after 10 PM on June 12, 2012 in violation of his curfew, a special condition of his probation imposed by [Ofc. Becker] in January 2012."[35] The Board credited Officer Becker's testimony and concluded that Appellant's son's "failure to honor the special condition of his probation should disqualify [Appellant] from an award of benefits."[36]

---

[33] Tr. at 69.

[34] Tr. at 69 – 70.

[35] Victims' Comp. Assistant Program Appeals Bd. Dec., 2 (Nov. 16, 2012) (hereinafter "Bd. Dec. at _____").

[36] *Id.*

On December 11, 2012, Appellant filed a Notice of Appeal of the Board's decision.

## Parties' Contentions

Appellant contends that the Board erred because her son did not have any curfew when he was released on bail. She further contends that her son was not in violation of his probation on May 24, 2012 and that Det. Chaffin "lied" at the board hearing.[37]

VCAP contends the Court should affirm the Board's decision to deny compensation of Appellant's claim for her son's funeral expenses. VCAP asserts that the Delaware "General Assembly has determined that the limited resources should not extend to claims arising from the criminal activity of the victim" and that there is substantial evidence that Appellant's son was in violation of a condition of his probation (i.e., his curfew) at the time of his death.[38]

## Standard of Review

Pursuant to 11 *Del. C.* § 9009(6), a "claimant who is dissatisfied by the [] Board's decision concerning compensation . . . may appeal to the Superior Court within 30 days following the date the decision of the [] Board is mailed to the claimant."[39]

---

[37] Notice of Appeal, at (3) (Dec. 11, 2012).
[38] Answering Br., 15 (Aug. 28, 2013).
[39] 11 *Del. C.* § 9009(6). *See also* 1 *Del. Admin. C.* § 301-20.2.

An appeal from a Board decision is not *de novo*.[40] The Court's role is limited to determining whether the Board's decision is free from legal error and its factual findings are supported by substantial evidence in the record.[41] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[42] The Court does not weigh evidence, determine questions of credibility, or make findings of fact.[43]

In addition, the Board has "a significant amount of discretion in determining who will and who will not receive compensation."[44] The Court will not substitute its judgment for that of the Board unless the Board has acted arbitrarily or capriciously "without given proper consideration to all matters which are pertinent to its decision."[45]

---

[40] *Id.* ("Any appeal to Superior Court shall not be *de novo*").

[41] *Robbins v. Victims' Comp. Assistance Program*, 2013 WL 6114435, *1 (Del. Super. Nov. 20, 2013); *Flood v. Violent Crimes Comp. Bd.*, 2001 WL 659826, *1 (Del. Super. May 31, 2001).

[42] *Anderson v. Violent Crimes Comp. Bd.*, 1994 WL 45340, *2 (Del. Super. Feb. 2, 1994).

[43] *See Newman v. Del. Violent Crimes Comp. Bd.*, 1993 WL 54447, *2 (Del. Super. Feb. 9, 1993) ("It is not the purpose of this Court to re-try the facts, re-weigh the evidence and recontemplate the Board's decision").

[44] *Id.*

[45] *Evans v. Del. Violent Crimes Comp. Bd.*, 1986 WL 3972, *1 (Del. Super. Mar. 17, 1986); *Campbell v. Del. Violent Crimes Compensation Bd.*, 1992 WL 19971, *3 (Del. Super. Jan. 14, 1992) ("The Court does not substitute its judgment for that of the agency").

If the claimant, who bears the burden of proof, "fails to meet [her] burden to convince the Board the claim is compensable, the denial may be overturned only for errors of law, inconsistencies, or capricious disregard of competent evidence."[46]

## Discussion

Pursuant to 11 *Del. C.* § 9009, the estate of a person who is killed as the result of a crime may file a claim with VCAP "for indemnification of all pecuniary loss which is a direct result of [that] crime."[47] However, VCAP "is not compelled to provide compensation in any case, nor is it compelled to award the full amount claimed."[48]

In determining whether to award compensation, VCAP "may consider any circumstances it deems relevant, including the behavior of the victim which directly or indirectly contributed to . . . death" under 11 *Del. C.* § 9010(b).[49] A claim may be denied if the victim "through wilful and unlawful conduct," substantially provoked or aggravated the incident giving rise to the injury."[50]

---

[46] *Robbins v. Victims' Comp. Assistance Program*, 2013 WL 6114435 at *1. *See also* 1 *Del. Admin. C.* § 301-14.1 ("In compensation cases, the burden of proof shall be upon the claimant"); *Campbell v. Del. Violent Crimes Compensation Bd.*, 1992 WL 19971 at *3.

[47] 11 *Del. C.* § 9009.

[48] 11 *Del. C.* § 9009(3). *See also* 1 *Del. Admin. C.* § 301-21.2.

[49] 11 *Del. C.* § 9010(b).

[50] 11 *Del. C.* § 9010(c).

Thus, the Board may find a claimant is "not entitled to compensation due to the victim's behavior on the day of his death."[51]

In the instant case, Appellant's son had been convicted of and sentenced for Resisting Arrest and PWID. He was resentenced when found to have violated probation of his original sentence. Then, in April 2012, Appellant's son appeared at a contested VOP hearing concerning allegations that he had violated the terms and conditions of the sentence imposed after he was found in violation of his original sentence. Appellant's son pled guilty to violating probation and was awaiting sentencing at the time of his death. The conditions of Appellant's son's probation remained unchanged while his sentencing was pending.

As a condition of his probation, Appellant's son was required to abide by a 10:00 p.m. to 6:00 a.m. curfew. However, WPD found Appellant's son inside of a vehicle on the Woodlawn Library's property and bleeding from a gunshot wound shortly before his death. Hence, Appellant's son was not in his residence during his curfew. It was within VCAP's discretion to consider the circumstances of Appellant's son's death in determining whether to award compensation.

---

[51] *Cameron v. Del. Violent Crimes Comp. Bd.*, 2008 WL 2690360, *2 (Del. Super. May 20, 2008) (affirming the Board's decision to deny compensation where the record showed that the claimant's son had engaged in illegal drug activity at the time of his death). *See also Robbins v. Victims' Comp. Assistance Program*, 2013 WL 6114435 at *3 (affirming decision to deny compensation for funeral expenses of shooting victim where the evidence showed he was the aggressor); *Newman v. Del. Violent Crimes Comp. Bd.*, 1993 WL 54447 at *1 (affirming the Board's denial of compensation for funeral expenses where the victim's blood alcohol level was .216 at the time of the motor vehicle accident that resulted in his death).

14

In addition, the Board weighed and considered the evidence presented before finding that Appellant's son failed to honor his curfew. The Board credited Officer Becker's testimony over Appellant's conflicting testimony that probation conditions change when a probationer is released on bail. According to Officer Becker, a probationer who is arrested for violating conditions of his probation will be held to the same probation conditions that were in effect prior to his arrest. If the court chooses to set conditions for the probationer's release on bail, the bail conditions are in addition to the probation conditions that remain in effect.

Moreover, Officer Becker testified that Appellant's son was informed of the conditions of his probation, including his curfew, and that he knew that there were no changes to his curfew when he pled guilty to violation of probation on April 11, 2012. Indeed, Appellant's son reported to Officer Becker as scheduled after he had pled guilty to violating his probation and Appellant acknowledged that her son remarked to her that "they didn't even change my VOP." Appellant did not present any evidence to refute Officer Becker's testimony. As a result, she failed to meet her burden to convince the Board her claim was compensable.

While Appellant asserts that Det. Chaffin "lied" in his testimony before the Board, the Court does not "weigh the credibility of witnesses" or "resolve conflicting testimony."[52] Here, there is substantial evidence to support the Board's

---

[52] *Casad v. Del. Violent Crimes Comp. Bd.*, 1993 WL 544011, *1 (Del. Super. Dec. 29, 1993).

conclusion that "the victim was not entitled to compensation due to his behavior on the day of his death."[53]

Although Appellant submitted "witness statements" and photographs related to her son's May 24, 2012 arrest with her Opening Brief, Appellant did not submit the "witness statements" and photographs to the Board and these documents were not included in the record submitted to the Court. Thus, the Court will not consider these documents on appeal because the Court's review is limited to the evidence that is presented below.[54]

## Conclusion

VCAP was not compelled to provide compensation for Appellant's son's funeral expenses. In determining whether to award compensation in this case, VCAP had the discretion to consider that Appellant's son, a probationer, had violated his curfew at the time his death. Thus, the Board's decision to affirm VCAP's denial of compensation is free from legal error and its factual findings are supported by substantial evidence in the record. The Board has properly considered all matters which are pertinent to its decision.

Accordingly, the Board's decision is **AFFIRMED**.

---

[53] *Newman v. Del. Violent Crimes Comp. Bd.*, 1993 WL 54447 at *2.

[54] *See Brown v. Unemployment Ins. Appeal Bd.*, 2011 WL 863310, *2 (Del. Super. Feb. 3, 2011) (holding "the Court's review is limited to the evidence before the Board" and refusing to expand the record to consider an appellant's document on appeal because she did not present the note to the UIAB).

16

**IT IS SO ORDERED.**

 

 

_____

Diane Clarke Streett
Judge

Original to Prothonotary

cc:    Gwenzella D. Pennewell, *Pro Se* Appellant
       Ralph K. Durstein, III, Esquire, Deputy Attorney General